DUNLAP, J.
The suit is brought by the village of Newburgh Heights, a municipal corporation. The defendants are the members of the deputy board of state supervisors and inspectors of elections for said county, who are sued in that capacity. Joined with them are the auditor of the county and the three members of the budget commission of the county.
The suit is the aftermath of an election and is brought to enjoin the holding of another and for further relief, which will be mentioned later in this opinion.
The facts disclosed by the petition are: that on November Í6, 1917, a petition was filed with the board of deputy state supervisors and inspectors of elections of Cuyahoga county, Ohio, properly signed, containing a description of certain territory which the petitioners desired to detach from said village of Newburgh Heights, and praying for an election for the purpose of determining whether or not the same should be detached and become a new township; that upon the filing of said petition said board of elections ordered an election to be held on December 4, 1917, and then later on November 28, 1917, without a new petition being filed, ordered the election to be held December 11, 1917, which Avas more than twenty days after the filing of the petition, and was thus contrary to laAv; that the election was accordingly held and resulted in a majority of the votes being in favor of the detachment of said territory and its erection into a new township to be called Willow; and the result of said elecetion has been certified to the secretary of state of Ohio.
It is then asserted that the territory described in said petition so sought to be detached from the plaintiff village contained about 1,800 acres of land, having a population of about 400 persons; that the total valuation of property on the tax duplicate of Newburgh Heights village prior to said election was *447 about $12, 000,000, and that the tax valuation of property listed for the portion of said village sought to be detached was about $11,000,000, leaving a valuation in Newburgh Heights village if said territory is detached of less than a million dollars, which will be inadequate to support the governmental functions of said village; that the portion which still constitutes the village has a very much greater population than the part here sought to be detached. It is also averred that the description of the part sought to be detached follows no regular or well-defined lines, but was drawn in such a manner as to include in it the large manufacturing plants of said village and farm land containing but few residences and mercantile buildings, and that said attempt to detach was instigated by certain large corporations owning valuable property in said detached part. It is claimed that the detachment of said part was an unreasonable, arbitrary and an unfair division of the village, and that its detachment will work an irreparable injury to the village and its citizens. It is also complained that, contrary to law one H. 1J. Shuler, an agent of the American Steel & Wire Co., and other large corporations, promised and offered the petitioners signing said petition, prior to the signing of the same, that if they would sign the petition requesting that an election be held, that the said corporations would defray all expenses involved in the holding of said election, and in filing, recording and transcribing the records necessary to secure said detachment, and thus save the petitioners from any expense, and that said petitioners would not have signed the petition but for said promise, and that the same invalidates the election held by virtue of said petition.
The claim is made that said corporation inspired said detachment of territory for the purpose of evading their fair share of taxation.
It is also charged that no portion of said territory so sought to be detached is contiguous to an adjoining township as required by law, but it is conceded in a supplemental petition, filed for the purpose of putting the court in possession of the exact facts regarding its contiguity to an adjoining township, that the territory sought to be detached from said village *448 was at all times mentioned in the pleadings contiguous to and did adjoin the township of Cleveland, the township of Brooklyn Heights, the township of East Independence, and the township of South Newburgh; that the township of Brooklyn Heights was coterminous in boundary with the village of Brooklyn Heights; that the township of East Independence was coterminous in boundary with the village of Independence; that the township of South Newburgh was coterminous in boundary with the village of South Newburgh; that the boundary line of the township of Cleveland was coterminous with the boundary line of the city of Cleveland at all points where said boundary line was contiguous to and adjoined the territory sought to be detached, but that at other points the city of Cleveland included territory not included within the township of Cleveland, and that no township officers perform any duties in the city of Cleveland adjoining Newburgh Heights village as originally constituted.
Having cited these claimed violations of the law in the proceedings leading up to and consummated in said election of December 11, 1917, and which it is claimed render all of said proceedings invalid and of no force and effect, information is then given to the court that the county commissioners have given notice that an election will be held on February 2, 1918, for the purpose of selecting officers of Willow township, being that portion of the territory sought to be detached, and that the deputy state supervisors and inspectors of elections are preparing to and wall prepare, unless enjoined by the court, ballots for said election, and will hold said election for the purpose of choosing the officers of Willow township; that said election will be of no force and effect and will be an unlawful expenditure of the funds .of the county and of Newburgh Heights village.
It is apparent that if said election has not been held on said date it never will be held on said date, and we are somewhat of the opinion that this obvious fact should have some bearing upon the remedy which plaintiff’s counsel should now attempt to pursue. In other words, it seems vain to ask us to enjoin a matter which must either already be an accomplished fact or else impossible of performance. This consideration should per- *449 baps dispose of this whole ease. Very evidently can. not enjoin an election Avhich has already been held. This point while not raised necessarily disposes of the question as to whether or not we can enjoin this election.
Some further consideration upon our part of the facts plead is perhaps necessary on account of the other relief asked for in the petition. It is sought to enjoin the budget commissioners from fixing the tax rate for said Willow township, and from depriving Newburgh Heights village of the taxes so fixed in said Willow township, and depriving Newburgh Heights village of the taxes payable on said property. It'is apparent that this additional relief can not be granted to the plaintiff if the township of Willow has a legal existence. If, by the election of December 11, and by the certification of its proceedings to the Secretary of State, it came into legal existence, if those proceedings were not utterly void, then the granting of this relief would be improper. The territory which attempted to detach itself from said village had under the law an apparent right to do so, provided it was contiguous to a township.
The facts contained in the supplemental petition referred to above do, wé think, bring this case within the provisions of Secs. 3577-1, 3577-2 and 3577-3 G. C., being the act of May 7, 1915 (106 O. L. 301), and we so hold. The fact that the election date for the original election for the detachment of this property was changed from December 4 to December 11, whether that latter date came within the twenty day period or not, does not make the election void. Persons interested in said election should have taken proper steps to see that it was legally held. They can not wait until long afterwards and then attack it collaterally when the new township so created seeks to operate under the powers and rights which were supposed to be secured by the election. The claim that the petition for the original election was invalid because the. petitioners were induced to sign on the representation that the expenses incident to the election would be defrayed by other parties, must be overruled. The statute merely provides that the expenses shall be defrayed by the petitioners and that the election officials may *450 require the payment of such expense in advance as a condition precedent to the taking by them of any of the steps provided for in the statute. It is a matter of common experience and common knowledge that such expenses are generally borne by some persons who arc particularly interested, and we know of no rule or principle of law deciding that after an election has been held the same may be over-turned by reason of such conduct upon the part of interested parties. We decide against the plaintiff upon this point.
With regard to the claim that the provisions of the General Code under which this detachment was effected is unconstitutional, we think that in similar cases decided by the Supreme Court of Ohio that court has sustained the constitutionality of such statutes. We refer particularly to the eases of the State Board of Health v. Greenville, 86 Ohio St. 1 [98 N. E. 1019; 1913D Ann. Cas. 52]; Blanchard v. Bissell, 11 Ohio St. 96; Metcalfe v. State, 49 Ohio St. 586 [31 N. E. 1076]; State v. Cincinnati, 52 Ohio St. 419 [40 N. E. 508; 27 L. R. A. 737], We believe that these authorities establish the proposition that that the entire subject-matter of the creation and organization of municipalities and of the enlargement and restriction of their boundaries, has been unreservedly committed to the discretion of the legislature by virtue of the constitutional provision that the general assembly “shall provide for the organization of cities and incorporated villages by general laws; ’ ’ and that the extent to which the revenues and the future activities of a municipality may be affected by the detachment of a portion of its territory is a matter for the consideration of the legislature and for it alone. We believe that the question of the wisdom of the legislation which permits this detachment of property has nothing to do with determining its constitutionality. The question of the wisdom of such legislation is for the legislature. This court might think and perhaps does think that it is the most unwise kind of legislation, but this consideration can in no way control our action. It is solely a question of power. If the legislature has constitutional power to enact a law, no matter whether the law be wise or otherwise, it is no concern of the court. Thus, in spite of the arbitrariness *451 of the boundaries fixed for this detached territory-, in spite of the damage that may be done to the remaining territory, it was within the province of the legislature to enact the law under which this detachment occurred, and in our opinion the statute under which the detachment took place is constitutional.
"We have no doubt that the situation which has occurred in this village is unfortunate, and we deeply deplore its occurrence, but our conclusion, that the statute is constitutional deprives us of all power to consider the allegations of the petition to the effect that the line is arbitrary and unfair. All that we can say upon this point is that the legislature did not see fit to define where such lines should run in its enactment and put no limitations upon the same. All that the court can say from examination of this petition is, that the inhabitants of a certain territory wished to relinquish their village government and again become a township. The laws of Ohio provide for the gratification of this desire.
So far as we are able to ascertain the provisions of the statute have been sufficiently complied with so as to at least insure their validity against a collateral attack such as we must necessarily regard this suit to be.
We regard the petition and supplemental petition as insufficient in law in that it does not contain facts sufficient to constitute a cause of action against the defendants or any of them, and the demurrer to the same will be sustained at the costs of the plaintiff.
Grant and Lawrence, JJ., concur.